# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| STEPHANIE PATTERSON<br>1105 W Rose Street<br>Springfield, Ohio 45506<br><br>     Plaintiff,<br><br>     v.<br><br>SUPPORTING INDEPENDENCE, LLC<br>Statutory Agent<br>Tricia Venable<br>1333 Seminole Avenue<br>Springfield, Ohio 45506<br><br>TRICIA VENABLE<br>1635 Selma Road<br>Springfield, Ohio 45505<br><br>ANDREA JONES<br>1635 Selma Road<br>Springfield, Ohio 45505<br><br>TRISHA TAYLOR<br>1635 Selma Road<br>Springfield, Ohio 45505<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

  Plaintiff Stephanie Patterson ("Patterson"), by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES & VENUE

1. Patterson is a resident of the city of Springfield, Clark County, Ohio.

2. Supporting Independence, LLC ("Supporting Independence") is a domestic limited liability company with its principal place of business located in Springfield, Ohio.

3. At all relevant times, Supporting Independence was an "employer", as defined under R.C. § 4112.01 *et seq.*

4. Defendant, Tricia Venable ("Venable"), is a resident of the state of Ohio.

5. At all relevant times, Venable was an individual, who was a Manager and/or Supervisor at Supporting Independence.

6. At all relevant times, Venable acted directly and/or indirectly in the interests of Supporting Independence, in relation to its employees.

7. At all relevant times, Venable was an "employer", as defined under R.C. § 4112.01 *et seq.*

8. Defendant, Andrea Jones ("Jones"), is a resident of the state of Ohio.

9. At all relevant times, Jones was an individual, who was a Manager and/or Supervisor at Supporting Independence.

10. At all relevant times, Jones acted directly or indirectly in the interests of Supporting Independence in relation to its employees.

11. At all relevant times, Jones was an "employer", as defined under R.C. § 4112.01 *et seq.*

12. Defendant, Trisha Taylor ("Taylor"), is a resident of the state of Ohio.

13. At all relevant times, Taylor was an individual, who was a Manager and/or Supervisor at Supporting Independence.

14. At all relevant times, Taylor acted directly or indirectly in the interests of Supporting Independence in relation to its employees.

15. At all relevant times, Taylor was an "employer", as defined under R.C. § 4112.01 *et seq.*

16. At all times herein, Patterson was acting in the course and scope of her employment.

17. At all times herein, Jones was acting in the course and scope of her employment.

18. At all times herein, Venable was acting in the course and scope of her employment.

19. At all times herein, Taylor was acting in the course and scope of her employment.

20. All of the material events alleged in this Complaint occurred in Clark County, Ohio.

21. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and (4).

22. Venue is proper pursuant to Civ. R. 3(C)(2).

23. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## **JURISDICTION**

24. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Patterson is alleging Federal Law Claims under the Civil Rights Act of 1964, 28 USC § 2000e, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq.*

25. All material events alleged in this Complaint occurred in Clark County, Ohio.

26. This Court has supplemental jurisdiction over Patterson's state law claims, pursuant to 28 U.S.C. § 136,7 as Patterson's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

27. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

28. Within 300 days of the conduct alleged below, Patterson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2019-01185 against Supporting Independence ("Patterson's EEOC Charge").

29. On or about May 29, 2019, the EEOC issued and mailed a Notice of Right to Sue letter to Patterson regarding Patterson's EEOC Charge.

30. Patterson received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1)—which is attached as Plaintiff's Exhibit A.

31. Patterson filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

32. Patterson properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## **FACTS**

33. Patterson is a former employee of Supporting Independence.

34. Patterson worked for Supporting Independence as a Home Manager.

35. On or around February 2018, Patterson made a complaint against one of her coworkers for cursing at a patient ("First Patient-Abuse Complaint").

36. Specifically, Patterson made her First Patient-Abuse Complaint against Christina "Donnie" Sebastian ("Sebastian").

37. Patterson filed her First Patient-Abuse Complaint with Trisha Taylor ("Taylor").

38. At all relevant times, Taylor was a Manager and/or Supervisor of Patterson.

39. Patterson drafted the First Patient-Abuse Complaint to Taylor in writing.

40. After receiving Patterson's First Patient-Abuse Complaint, Taylor indicated that she would "handle it."

41. However, upon information and belief, Taylor did not adequately address the allegations in Patterson's First Patient-Abuse Complaint.

42. After Patterson made her First Patient-Abuse Complaint, Patterson's treatment at Supporting Independence changed for the worse, in comparison to her similarly-situated coworkers, who did not make akin complaints.

43. On or around March 2018, Patterson made a second complaint against one of her coworkers for giving drugs to a patient ("Marijuana Complaint").

44. In the Marijuana Complaint, Patterson stated that she reasonably believed that her coworker, Michael Peek ("Peek"), gave marijuana to a patient.

45. Patterson filed the Marijuana Complaint with Taylor.

46. Following an investigation ("Peek's Investigation"), Taylor indicated that Patterson's Marijuana Complaint was "he said, she said."

47. Upon information and belief, Peek and Sebastian dated before and/or are dating.

48. Upon information and belief, Supporting Independence did not discipline Peek following Patterson's Marijuana Complaint.

49. Upon information and belief, Supporting Independence did not adequately investigate the Marijuana Complaint.

50. On or around June 2018, a patient damaged Patterson's car.

51. Accordingly, Patterson filed a Complaint about the damages done to her car ("Car Complaint").

52. After Patterson filed the Car Complaint, Supporting Independence did not discipline and/or counsel the patient.

53. By contrast, if a patient damages one of Patterson's similarly-situated coworkers' vehicles, Supporting Independence would discipline and/or counsel the responsible patient.

54. On or around August 9, 2018, Patterson made a complaint about a coworker abusing patients once again ("Second Patient-Abuse Complaint").

55. Patterson filed her Second Patient-Abuse Complaint with Karen Adkins ("Adkins").

56. Adkins was a Service and Support Administrator at Supporting Independence.

57. Akins told Patterson that she filed her Second Patient-Abuse Complaint with the Major Unusual Incidents ("MUI") Department.

58. Subsequently, on or around October 2018, Taylor called Patterson into her office for an unscheduled meeting ("Termination Meeting").

59. During the Termination Meeting, Taylor explained that she was missing paperwork ("Taylor's Paperwork") from her office.

60. Then, Taylor indicated that she believed Patterson was responsible for Taylor's Paperwork that was missing ("Taylor's Accusation").

61. In defense of Taylor's Accusation ("Patterson's Defense"), Patterson explained that she would not have had access to Taylor's Paperwork.

62. In spite of Patterson's Defense, Taylor informed Patterson that Supporting Independence was terminating her employment ("Patterson's First Termination").

63. Therefore, Supporting Independence issued Patterson's First Termination, without any evidence; yet, Supporting Independence did not discipline Peek for the Marijuana Complaint.

64. Thus, shortly after Patterson's Second Patient-Abuse Complaint, Taylor issued Patterson's First Termination.

65. Subsequently, on November 29, 2019, Andrea Regia ("Regia"), another one of Patterson's Managers and/or Supervisors, reached out to Patterson to offer her a job back at Supporting Independence ("Second Chance").

66. According to Regia, she spoke to Taylor, and they agree to bring Patterson back to work, subject to a 90-day probationary period ("90-Day Probationary Period").

67. By contrast, Patterson's similarly-situated coworkers, who did not make akin complaints, did not have to be placed on 90-day probationary periods, as Patterson was here.

6

68. Patterson accepted the rehire ("Rehire").

69. Shortly after Patterson's Rehire, Patterson informed Defendants that she was about to undergo a significant surgery, which would require some days off of work for healing ("Surgery").

70. In addition, on December 2, 2018, Patterson filed a Complaint with Peek because a patient was sexually harassing her ("Sexual Harassment Complaint").

71. The patient that Patterson filed her Sexual Harassment Complaint against was Tayler's son.

72. Patterson indicated that the patient made moaning noises ("Moaning Noises") around her.

73. Patterson indicated that the patient started multiple sexual conversations around her ("Sexual Conversations").

74. The Moaning Noises and the Sexual Conversations made Patterson uncomfortable.

75. Patterson asked for the conduct to stop; however, the patient continued to make Moaning Noises and engage in Sexual Conversations.

76. Upon information and belief, Supporting Independence did not punish and/or discipline the patient.

77. Upon information and belief, Supporting Independence did not adequately investigate Patterson's Sexual Harassment Complaint.

78. On December 19, 2018, Patterson had Surgery.

79. Patterson's doctor took her off of work until December 30, 2018.

80. However, on December 26, 2018, Patterson's healthcare provider, American Family Life Assurance Company of Columbus ("AFLAC"), sent her a letter stating: "Supporting Independence has notified us that you are no longer with their organization."

81. Then, on December 29, 2018, AFLAC, mailed her another letter informing her that her premium would no longer be payroll-deducted.

82. On December 30, 2018, Patterson attempt to return to work.

83. However, Defendants refused to let Patterson return.

84. According to Defendants, Patterson needed to provide a doctor's authorization.

85. On January 2, 2019, Patterson's doctor emailed Defendants and indicated that Patterson was authorized to return to work on **December 30, 2018**; however, Defendants refused to let Patterson return to work.

86. On December 31, 2018, Patterson requested an accommodation for the amount of weight that she was lifting ("Accommodation").

87. However, shortly after Patterson requested the Accommodation, Defendant terminated her employment ("Patterson's Termination").

88. According to Defendants, "Patterson walked off the job."

89. However, Patterson never walked off the job.

90. In fact, Patterson worked extra hours because the person, who was scheduled to come in after her, was late.

91. Moreover, Defendant customarily use security footage in the operation of its business.

92. Therefore, Defendant's security footage would establish that Patterson did not walk off the job.

93. Still, Defendant maintained its decision to issue Patterson's Termination.

94. There is a causal connection between Patterson's Complaints and Patterson's Termination.

95. Therefore, Defendant violated Ohio's Whistle Blower Statute when it terminated Patterson.

96. Similarly, Defendant violated public policy when it terminated Patterson.

97. Patterson experienced sexual harassment during her employment for Supporting Independence.

98. Defendants discriminated against Patterson on the basis of a perceived disability.

99. Furthermore, Defendants retaliated against Patterson by terminating her employment shortly after she requested an Accommodation.

100. As a direct and proximate result of Defendants' conduct, Patterson has and will continue to suffer damages.

### COUNT I: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52.

101. Patterson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102. Patterson reported patient abuse in her First Patient-Abuse Complaint.

103. Patterson reported patient abuse in her Marijuana Complaint.

104. Patterson reported patient abuse in her Second Patient-Abuse Complaint.

105. Patterson reasonably believed that abusing a patient is a felony under Ohio law.

106. In the alternative, Patterson reasonably believed that abusing a patient constituted a criminal act that threatens the public's health or safety.

107. Patterson reasonably believed that dealing drugs is a felony under Ohio law.

108. In the alternative, Patterson reasonably believed that dealing drugs constituted a criminal act that threatens the public's health or safety.

109. Patterson verbally complained to Defendants regarding this conduct.

110. Patterson complained to Defendants in writing regarding this conduct,

111. Patterson gave Defendants an opportunity to cure the reported misconduct.

112. Instead, Defendants retaliated against Patterson by terminating her employment because of her Complaints

113. Defendants issued Patterson's Termination in violation of R.C. § 4113.52.

114. As a direct and proximate result of Defendants' conduct, Patterson suffered and will continue to suffer damages.

## COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

115. Patterson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against medical malpractice.

117. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against selling marijuana ("Drug Dealing").

118. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against abusing patients.

119. Supporting Independence terminated Patterson's employment because of her Patient-Abuse Complaints.

120. Supporting Independence terminated Patterson's employment because of her Marijuana Complaint.

121. Defendants' termination of Patterson jeopardizes these public policies.

122. Defendants' termination of Patterson was motivated by conduct related to these public policies.

123. Defendants had no overriding business justification for terminating Patterson.

124. As a direct and proximate result of Defendants' conduct, Patterson suffered and will continue to suffer damages.

## COUNT III:  SEXUAL HARASSMENT IN VIOLATION OF R.C. § 4112.01 *et seq.*

125. Patterson restates each and every paragraph of this Complaint as though it were fully restated herein.

126. Patterson was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances from patients.

127. Accordingly, Patterson made the Sexual Harassment Complaint to Peek.

128. Specifically, a Supporting Independence client was sexually harassing Patterson.

129. In fact, that client was Taylor's son.

130. Defendants had knowledge of the sexual harassment and failed to take any corrective or remedial action.

131. As a direct and proximate result of Defendants' conduct or lack thereof, Patterson suffered and will continue to suffer damages.

## COUNT IV:  SEXUAL HARASSMENT IN VIOLATION OF 42 U.S.C. § 2000e *et seq.*

132. Patterson restates each and every paragraph of this Complaint as though it were fully restated herein.

133. Patterson was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances from patients.

134. Accordingly, Patterson made the Sexual Harassment Complaint to Peek.

135. Specifically, a Supporting Independence client was sexually harassing Patterson.

136. In fact, that client was Taylor's son.

137. Defendants had knowledge of the sexual harassment and failed to take any corrective or remedial action.

138. As a direct and proximate result of Defendants' conduct or lack thereof, Patterson suffered and will continue to suffer damages.

### COUNT V: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

139. Patterson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

140. Defendants treated Patterson less favorably than her similarly-situated coworkers, because Defendants regarded Patterson as disabled ("Perceived Disability").

141. On or about December 31, 2018, Defendants terminated Patterson's employment without just cause.

142. Defendants terminated Patterson's employment based on her Perceived Disability.

143. Supporting Independence violated R.C. § 4112.02 by discriminating against Patterson based on her Perceived Disability.

144. As a direct and proximate result of Defendant's conduct, Patterson suffered and will continue to suffer damages.

### COUNT VI: DISABILITY DISCRIMINATION UNDER 42 U.S.C. § 12101 *et seq.*

145. Patterson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

146. Defendants treated Patterson less favorably than her similarly-situated coworkers, because Defendants regarded Patterson as disabled ("Perceived Disability").

147. On or about December 31, 2018, Defendants terminated Patterson's employment without just cause.

148. Defendants terminated Patterson's employment based on her Perceived Disability.

149. Supporting Independence violated 42 U.S.C. § 12101 *et seq.* by discriminating against Patterson based on her Perceived Disability.

150. As a direct and proximate result of Defendant's conduct, Patterson suffered and will continue to suffer damages.

### COUNT VII: FAILURE TO ACCOMMODATE UNDER R.C. § 4112.01 *et seq.*

151. Patterson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. Patterson requested accommodations from Defendants because of her Surgery.

153. Specifically, Patterson requested if Defendants could try to avoid scheduling her with clients, who would require heavy lifting.

154. Patterson's requested accommodations were reasonable.

155. There was an accommodation available that would have been effective and would have not posed an undue hardship to Supporting Independence.

156. Defendants failed to engage in the interactive process of determining whether Patterson needed an accommodation.

157. Defendants failed to provide an accommodation.

158. Defendants violated R.C. § 4112.02 by failing to provide Patterson a reasonable accommodation.

159. As a direct and proximate result of Defendants' conduct, Patterson suffered and will continue to suffer damages.

### COUNT VIII: FAILURE TO ACCOMMODATE UNDER 42 U.S.C. § 12101 *et seq.*

160. Patterson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

161. Patterson requested accommodations from Defendants because of her Surgery.

162. Specifically, Patterson requested if Defendants could try to avoid scheduling her with clients, who would require heavy lifting.

163. Patterson's requested accommodations were reasonable.

164. There was an accommodation available that would have been effective and would have not posed an undue hardship to Supporting Independence.

165. Defendants failed to engage in the interactive process of determining whether Patterson needed an accommodation.

166. Defendants failed to provide an accommodation.

167. Defendants violated 42 U.S.C. § 12101 *et seq.* by failing to provide Patterson a reasonable accommodation.

168. As a direct and proximate result of Defendants' conduct, Patterson suffered and will continue to suffer damages.

## COUNT IX: RETALIATION UNDER R.C. § 4112.01 *et seq.*

169. Patterson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

170. Here, Patterson made her Sexual Harassment Complaint to Defendants.

171. Shortly after Patterson made her Sexual Harassment Complaint, Defendants refused to accommodate the medical restrictions prescribed by Patterson's doctor.

172. Shortly after Patterson made her Sexual Harassment Complaint to Defendants, AFLAC indicated that Defendants had terminated Patterson's employment, while she was out on a medical leave.

173. Accordingly, shortly after Patterson made her Sexual Harassment Complaints, Defendants terminated Patterson's employment.

174. Accordingly, shortly after Patterson made her Sexual Harassment Complaints against Taylor's son, Defendants terminated Patterson's employment.

175. Defendants' actions were retaliatory in nature based on Patterson's opposition to the unlawful discriminatory conduct.

176. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…".

177. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Patterson, she suffered and will continue to suffer damages.

## COUNT X: RETALIATION UNDER 42 U.S.C. § 2000e *et seq.*

178. Patterson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

179. Here, Patterson made her Sexual Harassment Complaint to Defendants.

180. Shortly after Patterson made her Sexual Harassment Complaint, Defendants refused to accommodate the medical restrictions prescribed by Patterson's doctor.

181. Shortly after Patterson made her Sexual Harassment Complaint to Defendants, AFLAC indicated that Defendants had terminated Patterson's employment, while she was out on a medical leave.

182. Accordingly, shortly after Patterson made her Sexual Harassment Complaints, Defendants terminated Patterson's employment.

183. Accordingly, shortly after Patterson made her Sexual Harassment Complaints against Taylor's son, Defendants terminated Patterson's employment.

184. Defendants' actions were retaliatory in nature based on Patterson's opposition to the unlawful discriminatory conduct.

185. Pursuant to 42 U.S.C. § 2000e-3, it is an unlawful discriminatory practice to retaliate against a person "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

186. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Patterson, she suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Stephanie Patterson respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Defendants to retroactively restore Plaintiff to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Patterson for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Patterson's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f)  An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

         /s/ Matthew G. Bruce_____
        Matthew G. Bruce (0083769)
        Lorenzo Washington (0096611)
        Paul Filippelli (0097085)
        **THE SPITZ LAW FIRM, LLC**
        8354 Princeton Glendale Road, Suite 203
        West Chester, OH 45069
        Phone: (216) 291-4744 ext. 173
        Fax:    (216) 291-5744
        Email: matthew.bruce@spitzlawfirm.com

        *Attorneys for Plaintiff Stephanie Patterson*

## JURY DEMAND

Plaintiff Stephanie Patterson demands a trial by jury by the maximum number of jurors permitted.

         /s/ Matthew G. Bruce_____
        Matthew G. Bruce (0083769)
        Lorenzo Washington (0096611)
        Paul Filippelli (0097085)